3:25-mj-00023

**DISTRICT OF OREGON, ss:**                                  **AFFIDAVIT OF JASON T. BUELT**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Jason T. Buelt, being duly sworn, do hereby depose and state as follows:

**Introduction and Detective Background**

1. I am a Detective with the Beaverton Police Department and have been so employed as a Police Officer for over 25 years. I am currently assigned to the Westside Interagency Narcotics Team ("WIN") in Washington County, Oregon, a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and have United States Code, Title 21 authority to investigate violations of federal law involving controlled substances. My duties include, but are not limited to, the investigation of crimes relating to the violation of the Uniform Controlled Substance Act and include dismantling/disrupting Drug Trafficking Organizations ("DTO's") and Money Laundering Organizations ("MLO's").

2. My formal law enforcement training includes a Basic certification received from the Oregon Department of Public Safety Standards and Training ("DPSST"). I currently hold an Advanced Law Enforcement certification through "DPSST." I have over 5000 training hours of additional training through the Beaverton Police Department. The training from "DPSST" and the Beaverton Police Department included, but was not limited to, narcotic investigations, testing of suspected controlled substances by scientifically accepted methods, and narcotic identification.

3. I have received specialized training in narcotics investigations including narcotics identification, surveillance techniques, and handling and packaging of evidence. This training had been provided to me by "DPSST," the United States Drug Enforcement Administration

("DEA"), and in-service training through the Washington County Sheriff's Office. Included in my training and experience, I have training specific to the identification and investigation of persons involved in the use, sale, distribution, and manufacturing of controlled substances including, but not limited, to methamphetamine, heroin, fentanyl, cocaine, MDMA, marijuana, and other controlled substances.

4.  I have been personally involved in numerous state and federal investigations and arrests involving the violation of the Uniform Controlled Substance Act and violations of Title 21 of the United States Code, to include 21 USC §§ 841(a)(1) and 846 involving the Possession with Intent to Distribute a Controlled Substance and Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance. In these arrests, suspected controlled substances were confiscated and tested, and then a confirmatory test was performed by the Oregon State Crime Laboratory which confirmed the identify of the controlled substance. These investigations have included the use of confidential informants ("CI's"), sources of information ("SOI"), toll records, physical surveillances, controlled purchases, buy busts, and the execution of search warrants. These investigations have also included possession with intent to distribute, and distribution of controlled substances. These investigations have resulted in numerous state and/or federal prosecutions of individuals who have possessed, and or distributed controlled substances, as well as the seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

5.  I submit this affidavit in support of a criminal complaint and arrest warrant for **Jassiel Alan Diaz-Elenes,** date of birth 02/xx/1999, (herein after referred to as **Diaz-Elenes**) for committing the felony crimes of Possession with Intent to Distribute 400 grams or more of a

mixture and substance containing Fentanyl, a Schedule II controlled substance; and, Engaging in a Conspiracy to Distribute and Possess with Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

7. Pursuant to 21 U.S.C. § 841(a)(1) it is unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute a controlled substance. Pursuant to 21 U.S.C. § 846 it is unlawful for any person to conspire to distribute and possess with intent to distribute a controlled substance. Fentanyl is a Schedule II controlled substance.

## Cooperating Defendant

8. This case involves the use of a Cooperating Defendant (CD). I believe CD's information to be reliable because the CD is specifically aware of the methods of packaging and the prices of the controlled substances, specifically fentanyl because the CD has dealt fentanyl and has accurately described this information to me. I desire to keep the CD confidential as it is my experience that narcotic informants may suffer physical, social, and emotional retribution

when their identities are revealed. Exact dates, times, and other specific information may remain confidential to help keep the CD confidential. The CD has no criminal convictions. The CD is providing information for potential consideration on a pending investigation and/or or sentencing consideration. No specific promises have been made to the CD. At the time the investigation started CD was not cooperating with law enforcement and was a target of the investigation and only started cooperating after being arrested.

### Statement of Probable Cause

9.   This affidavit is based on a joint investigation of a suspected drug overdose death being conducted by the Westside Interagency Narcotics Team (WIN) and the Federal Bureau of Investigations (FBI), hereinafter referred to collectively as "Investigators."

10.   On December 13, 2024, Investigators responded to the probable drug overdose death of Adult Victim 1 (an adult female with a date of birth February xx, 1975). Investigators located powdered fentanyl, methamphetamine, and counterfeit blue M30 pills containing fentanyl near Adult Victim 1's deceased body. In Adult Victim 1's cellphone, Investigators located text message communications between Adult Victim 1 and her dealer (hereinafter Level 1). In the text messages, Level 1 was agreeing to agreeing to sell Adult Victim 1 one half gram of fentanyl powder for $40 and the deal was to take place around 10 pm on Thursday, December 12, 2024, in Hillsboro, Oregon. Adult Victim 1's boyfriend reported to Investigators that he and Adult Victim 1 purchased powdered fentanyl from Level 1 and it was Adult Victim 1's first time buying powdered fentanyl from Level 1.

11.   As the investigation progressed, Investigators were able to identify Level 1 and conducted a controlled buy of fentanyl from him. At the conclusion of the controlled buy, Level

1 was contacted by law enforcement and agreed to cooperate and identified his source of supply as the CD (Level 2, who at this time was not working with law enforcement and was a target of the investigation).

12. With the assistance of Level 1, Investigators were able to identify two vehicles, as well as a residence in Gresham, Oregon associated to Level 1's dealer (known as Level 2 and the person who eventually became the CD).

13. On January 28, 2025, based upon probable cause that evidence of CD's drug dealing would be located therein, Investigators applied for and received federal search warrants for the apartment in Gresham, Oregon and the two vehicles.

14. On Wednesday January 29, 2025, within Multnomah County, Oregon, at approximately 1 pm, Investigators served the search warrants and recovered fentanyl in both powder and pill form. The CD was also arrested (at the time of his arrest the CD was not cooperating with law enforcement but rather a target of the investigation).

15. After being arrested, the CD told Investigators his supplier for the powdered fentanyl and for the blue counterfeit M30 pills was currently working and that he drives a white sedan. CD agreed to cooperate and told Investigators his supplier sells large amounts of fentanyl and has been offering him 20,000 blue counterfeit M30 pills in the recent past. CD told investigators CD would call a "dispatcher" to order the fentanyl and then the "dispatcher" would send a "runner." CD reported there are usually two "runners' who show up to complete the fentanyl transactions.

16. CD reported he didn't know the identities of the "dispatcher" or the "runners." CD reported he only had a phone number for the "dispatcher" and not for the "runners."

17. On January 29, 2025, Investigators had CD reach out to the "dispatcher" to purchase a predetermined amount of blue counterfeit M30 pills, which the dispatcher agreed to. The deal was then scheduled to occur later that day in Multnomah County, Oregon.

18. Investigators set up in the area of the predetermined meet location, at the time the deal was supposed to take place, and observed a white Hyundai sedan arrive in the area at about 4:30 pm being driven by the person subsequently identified as **Diaz-Elenes. Diaz-Elenes** was the lone Hispanic male in the vehicle. Investigators observed **Diaz-Elenes** driving very slow around the area before parking and leaving his headlights on. Investigators were then informed that **Diaz-Elenes** notified the CD that he was now at the meet location.

19. Investigators then contacted **Diaz-Elenes** in his vehicle and **Diaz-Elenes** was detained. Washington County WIN K-9 Mando, a drug detection K-9, alerted to the presence of narcotics inside of the white Hyundai sedan. Investigators then searched the white Hyundai sedan and located approximately 1,074.5 grams of blue counterfeit M30 pills (approximately 10,000 pills) that were found in a white plastic bag behind the front passenger seat; approximately 2.5 grams of fentanyl powder, found in black lunch box behind front passenger seat; $10,994 in U.S. currency in large zip lock bag, inside of the same black lunch box; approximately 3.2 grams of powdered fentanyl, from the front driver side door handle pocket; $309 in U.S. currency in **Diaz-Elenes'** wallet; and, a fake Sinaloa Mexico driver's license which **Diaz-Elenes** admitted was fake.

20. Investigators field tested the blue counterfeit M30 pills and the powdered fentanyl and the tests were positive for fentanyl, a Schedule II controlled substance. I know that field

tests are a reliable method of testing controlled substances and the results have been repeatedly verified by subsequent forensic analysis. A picture of the seized items is below:



21.     Investigators attempted to interview **Diaz-Elenes**, after he was advised of his constitutional *Miranda* rights in Spanish, and his only response to the questions was that he didn't know anything.

## Knowledge about Drugs

22.     I know that drug traffickers are regularly selling fentanyl in both powder and pill form (counterfeit M30 pills). I have seen and been involved in the seizure of multiple pounds of both powdered fentanyl and counterfeit M30 pills and field tests and forensic laboratory analysis conducted on samples of the powder and pills have confirmed the presence of fentanyl within them. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills containing fentanyl that they will then burn it on a piece of tin foil and inhale the fumes.

Sometimes a user will simply inhale the powdered fentanyl or ingest the pills. I know a gram of fentanyl powder typically sells for approximately $40 to $80 a gram. I know pills can sell for anywhere between .80 cents to a couple of dollars a pill. Depending on their level of addiction, I know that a user of powdered fentanyl will use in quantities of less than 1/10 of a gram. Depending on their level of addiction, I know that a typical fentanyl user buying pills may buy and use between one (1) and 20 pills a day, and sometimes more. I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller quantities of a gram or less. I know that a person possessing over (5) grams of fentanyl powder or pills (approximately 50 pills) does not possess the powder or pills for personal use but rather such a quantity indicates that they are possessed for purposes of further distribution. I also know that fentanyl is a Schedule II controlled substance.

## Conclusion

23.　　Based on the foregoing, I have probable cause to believe, and I do believe, that **Jassiel Alan Diaz-Elenes** has committed the felony crimes of Possession with Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl, a Schedule II controlled substance, and Engaging in a Conspiracy to Distribute and Possess with Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. I therefore request that the Court issue a criminal complaint and arrest warrant for **Diaz-Elenes**.

///

///

///

24.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Jason T. Buelt
Detective and FBI Task Force Officer
West Side Interagency Narcotics Team

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  8:37 a.m./p.m. on January 30, 2025.

_____
HONORABLE JEFFREY ARMISTEAD
UNITED STATES MAGISTRATE JUDGE